IN THE UNTIED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ROBERT S. JOHNSON                                                                                  PLAINTIFF

v.                                             Civil No. 6:06-cv-6009

MELVIN STEED;
JUDY McMURRIAN, Assistant Administrator,
Garland County Detention Center;
DEPUTY DAVID SHELBY                                                                          DEFENDANTS

**O R D E R**

Robert S. Johnson (Plaintiff) filed a *pro se* civil rights action under 42 U.S.C. § 1983 on March 20, 2006 against Defendant Steed; on April 20, 2006 against Defendants Steed and McMurrian, and on June 26, 2006 against Defendants Steed and Shelby. (Doc. 1 in cases 6:06-6009 (W.D. Ark. March 20, 2006); 6:06-6018 (W.D. Ark. April 20, 2006); and 6:06-6030 (W.D. Ark. June 26, 2006)). Plaintiff's Complaints were filed *in forma pauperis* (IFP) and certified to proceed. On February 6, 2007 (Doc. 16)[1], the cases were consolidated with case 6:06-6009 designated as the lead case.[2] Defendants filed their court-ordered Motion for Summary Judgment on April 30, 2007, which is the issue before the undersigned on consent of the parties. (Doc. 20). The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. 19). Pursuant to this authority, the Court issues Order.

**I. Background**

Plaintiff's claims arise from when he was detained in the Garland County Detention Center.

---

[1] The docket numbers for this case are referenced by the designation "Doc."

[2] Unless otherwise noted, all subsequent document references are to documents filed in the lead case: 06-cv-6009 (W.D. Ark. March 20, 2006).

Plaintiff alleges Defendant Steed denied him access to the law library, that the grievance procedure is inadequate, that he suffered verbal abuse, and that the conditions of confinement were unconstitutional. Plaintiff alleges Defendants Steed and McMurrian also denied him access to the law library, subjected him to verbal abuse, improperly dispensed medication, and improperly conducted disciplinary hearings. Plaintiff further alleges Defendants Steed and Shelby retaliated against him for filing grievances by having harassment charges filed against him in Garland County District Court and placing him in maximum security confinement.

Specifically, Plaintiff claims he sought to go to the law library on March 6, 2006, and July 3, 2006 as well as "several other" occasions where requests were made but ignored. Some of these additional requests were verbal, and some were written. Plaintiff states that since he could not go to the law library as requested he was unable to assist his attorney in his criminal case and file *pro se* any motions his attorney may have "missed" or overlooked. Plaintiff indicates he was convicted of second degree murder because he was unable to assist his attorney.

Plaintiff states he was denied adequate medical care, at one point, missing three days of medications. Further, Plaintiff states he was subjected to unreasonably dangerous conditions of confinement due to "chiggers" in his mattress which caused bites and inflamation. As to Plaintiff's claims of an improper disciplinary hearing, Plaintiff states he was denied the right to call any witnesses or have the presiding officers view any camera footage of the incident for which he was disciplined.

**II. Discussion**

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). The Court views the

evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Official Capacity Claims

Plaintiff has sued Defendants in their individual and official capacities. Plaintiff's official capacity claims are tantamount to suing Garland County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on *respondeat superior*, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *See id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91.

Plaintiff clearly states he is alleging official capacity claims. However, he indicates in his responses to court-ordered addenda to his complaints that many of his claims against Steed and McMurrian are based on *respondeat-superior*. He states Melvin Steed "did nothing" to control the

problems Plaintiff noted in his grievances, although Plaintiff alleges Steed had the ability to change and control the problems. (Doc. 8, ¶ 20). In case 6:06-6018 Plaintiff states that Melvin Steed should be held liable for the allegations in his complaint because "[h]e's the jail administrator and his job is to investigate complaints. . ." (Doc. 10). It appears from Plaintiff's Complaints, Addenda, and responses to the Motion for Summary Judgment, that Defendant Steed is alleged to only be personally responsible for the filing of harassment charges against Plaintiff and for Plaintiff's allegations of improper disciplinary hearings. All other claims, as they relate to Defendant Steed, are based upon the theory of *respondeat-superior*.

Plaintiff provides no evidence of an unconstitutional policy regarding filing harassment charges against an inmate for filing grievances or for holding improper disciplinary hearings. In fact, the policy noted by Plaintiff in the County Detention Center Inmate Rules and Regulations, which he attached to his response to the Motion for Summary Judgment, state the disciplinary board will allow the individual to call any witnesses he may have during the hearing. There is nothing further in the policy provided by Plaintiff that indicates it allows or is responsible for the unconstitutional acts alleged by Plaintiff. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims against Defendant Steed in his official capacity.

The same is true for many of Plaintiff's claims against Defendant McMurrian. Plaintiff states the actions Defendant McMurrian took to violate his constitutional rights were that "she is one of the department heads and I told her numerous times with grievances but nothing changed. It was in her power to do something about existing problems with inmates and deputies and she did nothing." (Doc. 10, ¶ 37, 06-6018). Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims against Defendant McMurrian in her official capacity.

In alleging unconstitutional policies of the Garland County Detention Center, Plaintiff cites to many items outlined in the County Detention Center Inmate Rules and Regulations, and appears to be alleging that the Detention Center failed in following these procedures. Plaintiff indicates the "Care of Living Area" policy stating it "is your responsibility to keep your living area clean, in order, and in sanitary condition" and the policy that "cells and dayrooms will be kept clean and sanitary" were not followed. Plaintiff cites to the "Mail and Money" policy, "Medical and Dental Care" policy, "Grievance and Disciplinary Code," "Discipline policy," "Appeals," and "Procedure for Filing a Grievance" by simply marking "policy" but no further mention of how this policy was responsible for his alleged constitutional violations.

Plaintiff may have alleged these regulations are policies of Garland County and they caused the alleged constitutional violations in this case, but he has offered no proof to support this allegations. Reviewing the Detention Center's Inmate Rules and Regulations, the court finds nothing that would substantiate any of Plaintiff's claims. Proper adherence to these "policies" by the Defendants would not result in a violation of the Plaintiff's constitutional rights. There is no proof that the alleged constitutional violations were caused by an existing unconstitutional municipal policy.

Plaintiff also appears to allege the jail policy of writing "refused" on medication logs if an inmate does not respond to medication call is unconstitutional. Defendant states he was denied medication under this policy as he did not hear his name called and consequently did not receive his medications.

Plaintiff has failed to show the system of the Garland County Detention Center in passing out medications is constitutionally deficient. The record shows the officials were providing

Plaintiff's medication to him on a consistent basis. Although he let Defendants know he did not receive medications because he did not hear his name, there is no evidence the policy of Garland County in writing "refused" when an inmate fails to respond to medicine call was an intentional denial of these medications to prisoners. *See Jolly v. Kundsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (holding a deliberate-indifference standard applies to missed medication claims). Likewise, Plaintiff has not demonstrated that any other prisoners were also missing their medication under this policy. Therefore, the Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's official capacity claims.

### B. Individual Capacity Claims

1. Plaintiff's Claim Defendants Refused to Allow Witnesses

Plaintiff alleges that during his disciplinary hearing for fighting with another inmate he was not allowed to call witnesses or provide video evidence on his behalf. Plaintiff challenges these actions as a due process violation.

In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court established certain minimum due process rights which must be afforded prisoners in disciplinary proceedings. Among these requirements is an inmate's limited right "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. While prison officials retain discretion to refuse to call witnesses "whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases," *id.,* this discretion "is not unbounded." *Cardaropoli v. Norton,* 523 F.2d 990, 998 (2d Cir. 1975). Courts have recognized that the right to call witnesses is basic to a fair hearing and that there must be a legitimate reason for denying a prisoner this opportunity. *See Wolff,* 418 U.S. at 566; *Woods v.*

*Marks,* 742 F.2d 770, 773-74 (3d Cir. 1984); *Redding v. Fairman,* 717 F.2d 1105, 1114 (7th Cir. 1983), *cert. denied,* 465 U.S. 1025 (1984); *Bartholomew v. Watson,* 665 F.2d 915, 918 (9th Cir. 1982). *Cf. White v. Wyrick,* 727 F.2d 757 (8th Cir. 1984) (no right to compulsory process).

Thus, prison officials may not arbitrarily deny an inmate's request to present witnesses or documentary evidence. *See Ponte v. Real,* 471 U.S. 491 (1985). Moreover, the officials must at some point explain their reasons for refusing to grant such a request. Finally, the burden of proving adequate justification rests with the prison officials. *See id.*

The *Wolff* Court stated that it would be "useful" if the prison officials stated their reasons for refusing to call witnesses. *See Wolff,* 418 U.S. at 566. But this was not made a requirement. *See Baxter v. Palmigiano,* 425 U.S. 308, 322 (1976). This led some courts to hold that where such a statement of reasons is not provided, the reasons for the refusal must appear in the administrative record. *See e.g., Hayes v. Thompson,* 637 F.2d 483, 488 (7th Cir. 1980). However, the Supreme Court held that this also is not a due process requirement and that prison officials may wait until the refusal is challenged in court to provide the rationale for their actions. *See Ponte,* 471 U.S. at 503.

In their brief in support of the Motion for Summary Judgment, Defendants state the "disciplinary process is reviewed by a board of supervisors, not connected with the alleged incident, who reviews statements of witnesses, the rules, and affords the detainee the opportunity to either testify or submit written statements concerning the alleged incident." (Doc. 21). Specific to the incident at issue, the Defendants state Plaintiff was involved in a fight with another inmate and found guilty of fighting and sentenced to fifteen days lock down and ten days loss of privilege. Defendants do not state whether Plaintiff requested witnesses and if so, why those witnesses were denied. The record of the hearing shows that no witnesses were present. (Doc. 21, Ex. G). While it may well

be that Defendants had a constitutional reason for excluding Plaintiff's witnesses and evidence from the hearing, the Court can not determine if that is the case from the record before it. There is no indication in the record of the reason given for the exclusion. Accordingly, Defendants' Motion for Summary Judgment is **DENIED** at this time as to Plaintiff's claims of violations of due process due to improper disciplinary hearings. The Court directs Defendants to file a supplemental Motion for Summary Judgment addressing this claim within fourteen (14) days of the date of this Order. Plaintiff is directed not to respond to the supplemental Motion until directed to do so by the Court.

  2. <u>Retaliation Against Plaintiff</u>

Plaintiff alleges he was retaliated against by Defendants Steed and Shelby because criminal harassment charges were filed against him in Garland County District Court and he was moved to a "maximum security" cell block.

A prisoner's Eighth Amendment rights are violated if prison officials "impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right." *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir, 1993). A *prima facie* case of retaliatory discipline requires a showing that: (1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline. *See id; Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). An inmate has a heavy evidentiary burden to establish a *prima facie* case of retaliation. *See Murphy v. Mo. Dept, of Corr.*, 769 F.2d 502, 503 n1 (8th Cir. 1985). Merely alleging that an act was retaliatory is insufficient. *See Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985).

Here, Plaintiff contends that because he submitted grievances and filed lawsuits he was subjected to retaliation in the form of being placed in "maximum security" and having criminal

charges brought against him for harassment.

Clearly, the filing of his lawsuits under Section 1983 would meet the *prima facie* requirement that Plaintiff was exercising a constitutionally protected right. However, Plaintiff has failed to show he was disciplined by a move to a "maximum security" cell. Plaintiff complained he was on "lockdown" but Defendants explained he was not on lockdown but rather that inmates in his cell block were only being allowed out one hour a day due to a fight that had occurred the previous day. Additionally, it appears the only difference between the cell Plaintiff was moved to and the cells where he previously had been housed was that his new cell did not have a television. *See Rahman X v. Morgan*, 300 F.3d 970 (8th Cir. 2002) (holding that no due process violation existed when prisoner was put in segregation cell for non-punitive reasons because prisoner was not subject to hardships placed on prisoners moved to that cell for punitive reasons and main hardship identified was loss of television in his cell). Plaintiff provides no evidence that the decision to move Plaintiff to the "1-B" cell block was motivated any impermissible motive. Thus, Plaintiff has not shown that he was disciplined by the move or that the move was motivated by his filing of lawsuits or grievances.

The same analysis applies to Plaintiff's allegation he was retaliated against by having harassment charges filed against him in Garland County District Court. While Defendant Steed admits he caused these charges to be filed, it was a non-party, the county attorney, who actually brought the charges. *See Williams v. Davis*, 200 F.3d 538, 539 (8th Cir. 2000). Additionally, the charges were later dismissed by the county attorney, thus the Court can not say that the prison

officials disciplined Plaintiff by filing the charges.[3]  Defendant's Motion for Summary Judgment regarding Plaintiff's claims of retaliation is **GRANTED**.

  3. <u>Plaintiff's Claims Regarding his Conditions of Confinement</u>

Plaintiff claims he was subjected to unconstitutional conditions of confinement due to "chiggers" being present in his bedding and causing bites and whelps on his skin and being placed in cells with toilets that leaked.

Plaintiff only filed one grievance regarding the issue of overflowing toilets or waste on the floor.  The grievance was dated February 21, 2006, and in response to Plaintiff's grievance, prison officials responded that Plaintiff would be moved.  Plaintiff offers no evidence he was not moved, nor does he provide any further grievances concerning the problem.  Thus, it appears Plaintiff's claim is without merit because either the situation was remedied as soon as jail officials were alerted to it, or because Plaintiff failed to exhaust his administrative remedies regarding any further incidents.

The same is true regarding Plaintiff's claims of chiggers in his bedding.  Plaintiff never filed a grievance regarding this issue, although he did claim to need a new mattress in a medical request.  It is clear Plaintiff was suffering some type of allergic reaction, however, he offers no proof the reaction was due to "chiggers" in his bedding or that the bedding contained these insects.  Accordingly, Defendants Motion for Summary Judgment is **GRANTED** on Plaintiff's claims of

---

[3] The facts are somewhat similar to *Kaufman v. Karlen*, No. 06-C-205-C, 2007 WL 1821098, *23 (W.D. Wis. June 21, 2007), where the court noted "[p]rison officials' hands are not tied entirely when it comes to the filing of inmate grievances to the extent that the exercise of the right impedes the efficient administration of the prison." *Id.* at *23.  The Court noted that when the prisoner's "filing [of grievances] became abusive," he was disciplined for his repeated filing of inmate complaints on the same subject and "[s]uch discipline does not constitute retaliation." *Id.*

unconstitutional conditions of confinement.

    4. <u>Denial of Medical Care</u>

Plaintiff appears to be alleging a denial of medical care claim due to his medication being thrown on the ground, sometimes being served without a snack, and being marked "refused" when Plaintiff does not answer the call for medications. The Court notes this allegation appears to be against Defendant Shelby, as Defendants McMurrian and Steed did not pass out medication and Plaintiff's Complaint (Doc. 1, 06-6018) appears to only hold McMurrian and Steed responsible in a *respondeat-superior* capacity. As noted above, such liability will not attach under Section 1983.

Deliberate indifference to medical care includes intention interference with prescribed treatment. *See Estelle v. Gamble*, 428 U.S. 97, 104-05 (1976). In this case Plaintiff alleges, at most, there were three days where he went without medication. The medical logs provided by Defendants show that Plaintiff often refused his medications. Plaintiff states he did not truly "refuse" but that he missed hearing his name called for medications. In response to his grievance regarding this issue, Plaintiff was told he must listen for medication call and respond to his name, or the officer dispensing medication will write "refused." Plaintiff demonstrates no constitutional issue with this practice. He has provided no evidence or allegations Defendants purposely tried to avoid him during medication call or not call his name loud enough for it to be heard. There is no evidence showing defendants intentionally denied, or delayed in obtaining Plaintiff's medication. Plaintiff's complaint that at times his medication was thrown to the ground, while perhaps inappropriate on behalf of the officer, does not appear to raise a constitutional challenge. This leaves Plaintiff's claim he was sometimes not provided a snack for taking with his evening medication.

Plaintiff states his medications make him sick and cramp his stomach if he is not provided

with a snack to take with his medication. He states that "occasionally" he was forced to refuse his medication because he was not provided with a snack. Plaintiff filed a grievance regarding this issue on January 28, 29, and 31, 2007. Plaintiff was given a prompt reply each time from Defendant Steed, including a meeting with him. The evidence shows the situation was soon resolved by the date of the last grievance and Plaintiff filed no more complaints regarding the issue. Thus, the claim does not rise to the "deliberate indifference" standard.

Moreover, Plaintiff has failed to show how he was harmed by his medication being "dashed on the floor" or Defendants writing "refused" when Plaintiff did not respond to medication call. Plaintiff stated he was harmed by his medication being thrown down because "it made me angry but I couldn't do anything but cry and get mad." (Doc. 10 ¶8, 06-6018). When asked how he was harmed when the deputies wrote down refused, Plaintiff stated he was "scared" he would have a seizure and that "all I could do is cry and be mad . . .." *Id*. Plaintiff indicated no physical symptoms.

Plaintiff also appears to assert he was denied medical care or at least delayed in seeing a physician. However, Plaintiff's grievances show that after every medical complaint his personal physician was contacted, Plaintiff was seen by a jail nurse or doctor, or Plaintiff's complaint was already being treated. There is no evidence in the record Plaintiff was denied or delayed in being seen by a physician. At most, Plaintiff's complaints appear to be that he disagreed with the treatment given him by persons not party to this suit.

    5. Denial of Law Library Access

Plaintiff alleges he was denied access to the courts by being denied access to the law library. The record shows Plaintiff requested to go to the law library on January 29, 2006, March 8, 2006, and July 3, 2006 and was allowed to do so. Plaintiff states there were additional times he requested to go to the law library but was not allowed to do so.

When bringing an access-to-courts claim, a plaintiff cannot merely allege a denial of access to a law library or adequate attorney, even if the denial is systemic. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, the plaintiff must show the lack of a library hindered the plaintiff's efforts to proceed with a legal claim in a criminal appeal, post-conviction matter, or civil rights action seeking to vindicate basic constitutional rights. *See id*. The Constitution does not require a state to "enable [a] prisoner to *discover* grievances, and to *litigate effectively* once in court." *Id.*

In this case, Plaintiff has not shown that the alleged lack of library access hindered his efforts to proceed with a legal claim. Plaintiff stated his harm was that he could not file *pro se* motions in his criminal case. However, Plaintiff was represented by an attorney. Courts do not have to address *pro se* motions by represented persons, thus Plaintiff can show no harm to his ability to proceed in defense of his criminal charges. *See United States v. Agofsky*, 20 F.3d 866, 872 (8th Cir.) (holding that a court commits "no error" in refusing to rule on *pro se* motions raised by a represented party), *cert. denied,* 513 U.S. 909 (1994). Moreover, the Court can not say that any denial of law library time was a denial of Plaintiff's access to the courts – Plaintiff had access to his attorney via telephone, mail, or jail visit. (Doc. 25); *Bounds v. Smith,* 430 U.S. 817, 828 (1977) (holding that prison authorities must provide inmates with adequate law libraries or adequate assistance from persons trained in the law).

    6. <u>Verbal Abuse</u>

Plaintiff alleges he was "verbally abused" amounting to "mistreatment" by Defendants. Generally, mere verbal threats made by a state-actor do not constitute a Section 1983 claim. *See Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir.1985). In *McFadden v. Lucas,* 713 F.2d 143 (8th Cir. 1983), the Court stated that " 'mere threatening language and gestures of a [state actor] do not, even if true, amount to constitutional violations.' " *McFadden,* 713 F.2d at 146 (quoting *Coyle v.*

*Hughs,* 436 F.Supp. 591, 593 (W.D.Okl. 1977)).  In determining whether the constitutional line has been crossed, a court must look to such factors as "the amount of force that was used in relationship to the need presented, the extent of injury inflicted, and the motives of the state officer." *Id.* (citation omitted). "If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983." *Id.* (citation omitted).

Here, Plaintiff has not alleged any physical threat or infliction of injury.  While he states in grievances he was "afraid for his life" and that he was afraid for Defendant Shelby to serve him food, there is no evidence before the Court that these fears were based upon any threats or harassment made to Plaintiff.  Plaintiff states the verbal threats he received were to "get your ass in your cell" or to "shut up" or other commands, often with expletives.  (Doc. 10, 06-cv-6018) Such harassment is does not rise to a constitutional violation.  Defendants' Motion for Summary Judgement is **GRANTED** as to Plaintiff's claims of verbal abuse.

### III. Conclusion

For the reasons stated, I recommend that the Defendants' Motion for Summary Judgment be **GRANTED in part and DENIED in part.**  Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's claim his due process rights were violated by Defendants' alleged refusal to allow him witnesses at his disciplinary hearing.  Defendants' Motion for Summary Judgment is **GRANTED** as to all other claims.

Defendants are hereby directed to file a supplemental Motion for Summary Judgment regarding Plaintiff's claim Defendants refused to allow him witnesses at his disciplinary hearing within fourteen (14) days of the date of this Order.  Plaintiff is directed not to respond to the

-15-

supplemental Motion for Summary Judgment until ordered to do so by the Court.

**IT IS SO ORDERED** this **4th day of March 2008.**


                                            /s/ Barry A. Bryant  
                                            HON. BARRY A. BRYANT  
                                            U.S. MAGISTRATE JUDGE